### Case No. 12,239a.

ST. LOUIS SMELTING & REFINING CO. v. KEMP et al.

[King Laws & Prac. Colo. 197.]

Circuit Court, D. Colorado. Nov., 1879.[1]

MINES AND MINING—PATENTS FOR PLACER CLAIMS —FOREIGN CORPORATIONS.

[1. Under the act of congress of 1870, no individual or association could obtain a valid patent for a placer claim covering more than 160 acres; and after the act of 1872, no individ-

1 [Reversed in 104 U. S. 636.]

ual could obtain a patent covering more than 20 acres.]

[2. Under the acts of 1866, 1870, and 1872, it was necessary, in order to obtain a valid patent for placer land, where the claimant owned several adjacent locations, to make separate application for each, and take separately, in respect to each, all the statutory steps; and a patent issued for the whole tract upon a single application is void.]

[3. A foreign corporation, organized for the purpose of reducing ores, is not bound, in purchasing land for the erection of its works, to confine itself to the amount actually needed at that time, and, if it afterwards finds that the whole tract will not be required, it may sell the parts not needed.]

[This was an action of ejectment brought by the St. Louis Smelting & Refining Company against Thomas Kemp and others.]

HALLETT, District Judge (charging jury). This action is brought by the plaintiff to recover possession of a lot in the town of Leadville, lot No. 5, block No. 1, in the addition of the St. Louis Smelting and Refining Company to the town of Leadville. The plaintiff attempts to show its right to this lot, and relies upon a patent which was issued in March last to one Thomas Starr, and upon a conveyance from Thomas Starr to August R. Meyer, and from August R. Meyer to the plaintiff. This patent was introduced in evidence, and appears to be for 164.61 acres of land, and the question has arisen as to whether a patent may lawfully issue for so much land as a placer claim under the mineral laws of the United States. Of course, if the patent is not valid, as the plaintiff's title is derived from that, it cannot recover in this action, and therefore it becomes material to consider whether the patent is valid and effectual to convey the land or not. No question is made as to the conveyances from Mr. Starr to Meyer, and from Meyer to the St. Louis company, nor as to whether the lot in controversy is in the tract mentioned in the patent, and in that part of the same conveyed to Meyer, and by Meyer to the plaintiff; so that the substantial question for your consideration is, whether the patent is a valid instrument or not. Now, upon that subject, congress, in 1870 [16 Stat. 217], passed an act giving claimants of placer claims the right to obtain from the government a patent for such claim. An act had been passed prior to that, in the year 1866 [14 Stat. 66], giving such right as to lode claims, to persons having lode claims upon the public lands, to obtain a patent from the government by complying with the terms of the act, and that act, in its provisions, was very direct and specific as to the things to be done by the claimant in order to obtain a patent. He was to make a diagram of his location, and file it in the local land office; he was to post a notice upon the claim for the time specified, with his application, and also publish a notice in a newspaper, which was to be designated by the land officer, describing his claim; and all this was in-

tended to give to persons who might have an adverse claim an opportunity to come in and show their rights, and when they came, they were to file a statement of their claim in the local land office, and thereupon the parties were referred to the courts in which to settle their controversy. The adverse claimant was required to bring suit in a court of competent jurisdiction against the claimant of the original applicant for a patent, and upon that suit between the parties was the right to be determined. The patent was to be awarded to the party who should be successful in that suit.

In this act of 1870 [supra] it was provided that the title to placer mines was to be obtained in the same manner and upon similar proceedings; that whatever was specified in the act of 1866 as to the method of proceeding as to lode claims was also made applicable to placer claims by this act of 1870; and it was provided in that act, also, that no location of a placer claim thereafter made should exceed one hundred and sixty acres for any one person or association of persons, so that locations thereafter to be made were to be limited to that number of acres, if the rules of the local district in which the claim was situated would allow them to take so much. The provision was that the claim should not exceed one hundred and sixty acres. From what would appear—that they were to conform with the local rules of the district as to the extent of these claims subject to this provision—they could not get more than one hundred and sixty acres, and they might be limited to less, if the rules of the district so prescribed. In 1872 an act [17 Stat. 88] was passed which embraced the whole subject of lode and placer claims, and that was intended by congress to comprehend both acts—the act of 1866 and this act of 1870—in respect to placer claims. By that act an individual claimant was not allowed to take more than twenty acres. He was limited to twenty acres as to the extent of his claim, but nothing was said as to the amount that could be taken by an association of persons, and, probably, the provisions of that act upon that question are still retained.

These provisions of the several acts of 1866, 1870 and 1872 have been embodied in the Revised Statutes, and so they are the law at the present time, and were the law at the time this patent was applied for and when it was issued. Now, upon these several provisions to which I have referred, it is to be said that a patent for a claim since 1870 can in no case exceed one hundred and sixty acres—that is, for a single claim; and it cannot be so much except in the case of an association of persons. An association of persons may take one hundred and sixty acres; an individual claimant in the locations made since 1872 can have only twenty acres. I think I stated to you that in the act of 1870 individuals and associations were put upon the same footing,—that either might take one

hundred and sixty acres; but when the act of 1872 went into force, an individual claimant was limited to twenty acres, and as nothing was said in that act as to the quantity to be taken by an association of persons, they might still take one hundred and sixty acres. So that, since 1872, the law has been that an individual claimant may have twenty acres, and an association of persons can have one hundred and sixty acres, and no more. Locations prior to 1870 must conform to the local laws of the district, because nothing is said in the act of congress as to the extent of a location prior to that date, and by the laws of the district locations made prior to that time may be governed entirely. So that when this patent came to be introduced, for the purpose of showing whether it was upon a location made prior to 1870, we allowed the defendants to introduce the proceedings had in the land office, which show distinctly that the claim of Mr. Starr was based upon a number of locations,—twelve or fifteen of them,—some of twenty or thirty acres, perhaps, and some of a less number of acres; and these locations were made from time to time, some prior to July 9, 1870 (the date of the first act upon the subject), and some of them since that time up to 1877. And so it cannot be said that this patent issued upon a location made prior to July 9, 1870, but it is shown clearly that it was issued on the consolidation of several claims, some of them made prior to that time, and some since that time.

Now, upon that, if Mr. Starr was the owner of these claims, if he had obtained them by purchase, and they were valid and regular locations, he would, under the act, be required, if he desired to obtain a patent for them, to make the application for each one of them, to post the notice as required by the statute and give the notice by publication, and file his plat and survey, and do all these things which are required in the several claims, upon each one of them. And if he had done so, and his right had been supported as to all of them, and the patent had been issued for all these claims, and each of them, described in the patent, there would have been no objection to the patent; but it was not competent for him to consolidate these claims, and put them all in as one claim, and upon notice given as one claim, and publication as one claim, and proceeding throughout as one claim, embracing one hundred and sixty acres. It is to be said that the officers of the land department had no authority in law to proceed in that way; therefore the patent upon which the plaintiff relies is void and their title fails.

Now, upon another question which is in the case, and would be contested if this one, which I have submitted to your consideration, were not decisive: If the plaintiff purchased this land at the time when there was no town upon it, and for the purpose of its organization, it cannot be regarded as an objection to the patent that it is now occupied for town purposes. The question is, whether the plaintiff, being a corporation, is competent to hold property of this kind, that is, in use for town purposes; and the position assumed by the defendants is, that the plaintiff, being a corporation for the purpose of smelting and refining ores, organized for that purpose, that it has no right to deal in town property. That, as a general proposition, is correct; but it appears here in evidence that the property was purchased before any town was located upon it, and that it was purchased for the use of the corporation, and whether they got less or more than was necessary for their use. If it was bought for the purpose of carrying on the business of the corporation, the title of the plaintiff is complete, and the plaintiff, in making its purchase, was not bound to confine itself to what was necessary for its use at that time, but could purchase a quantity of more than enough for its present use. If that was done, no objection could be raised as to its title at least; that is to say, as to the quantity of land here mentioned. I suppose there are works in this country which cover a great deal more than thirty acres; it would not be difficult to point them out. We have such in mind, so that it cannot be said that as to the quantity of land, if it was bought for the use of the corporation, and with the intention of locating their works upon it, that it was excessive; and having bought it for a legitimate purpose, if, afterwards, they found it necessary or expedient or desirable to sell a portion of it, whether for the use of the town or otherwise is immaterial; their title in the property being good and valid, no question can now be raised in respect to it. But that is not the controlling question for present consideration. The question, in the first instance, is as to whether the plaintiff has any title to this property, and on that question the law has decided against them.

[NOTE. The jury found for defendants, and judgment in their favor was accordingly entered. The cause was carried by writ of error to the supreme court, where it was first heard on a motion to set aside submission, which was done. 103 U. S. 666. The supreme court reversed the judgment of the circuit court, and remanded the cause for a new trial. 104 U. S. 636.]